J-S04004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.N.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1603 MDA 2017 |

Appeal from the Decree Entered September 12, 2017
In the Court of Common Pleas of Luzerne County Orphans' Court at No(s):
A-8563

BEFORE:  SHOGAN, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 23, 2018**

P.E. ("Father") appeals from the Luzerne County Orphans' Court's September 12, 2017 decree involuntarily terminating his parental rights to his daughter, B.N.E. ("Child"), born in May of 2015.[1]  N.T., 8/10/17, at 20. Following our careful review, we affirm.

The record reveals the following relevant facts and procedural history. On April 18, 2016, Father pleaded guilty[2] to one count of aggravated assault, a second-degree felony, pursuant to 18 Pa.C.S. § 2702(a)(8), which provides that a person is guilty of aggravated assault if he "attempts to

---

[1]  By decree of the same date, the orphans' court involuntarily terminated the parental rights of B.W. ("Mother").  Mother did not file a notice of appeal and is not involved in this appeal.

[2]  ***Commonwealth v.*** [***P.E.***], Luzurne County Criminal Division, 4066 of 2015.  N.T., 8/10/17, at 22.

cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older." N.T., 8/10/17, at 20–23, 43; Orphans' Court Opinion, 11/3/17, at 3. Father perpetrated this crime on Child on or about September 25, 2015, when Child was four months old. N.T., 8/10/17, at 44. Specifically, Father pleaded guilty to pinching Child "multiple times to the point where he left bruises." *Id.* In addition, he admitted "to grabbing [Child] by the sides and squeezing her to the point where he left fingernail marks." *Id.* On June 16, 2016, the criminal court sentenced Father to a term of imprisonment followed by twelve months of special probation. *Id.* at 43. On October 27, 2015, Father entered the State Correctional Institution ("SCI") at Rockview, where he remained at the time of the subject proceedings. N.T., 8/10/17, at 40.

On September 28, 2015, Luzerne County Children and Youth Services ("CYS") took custody of Child, placed her in a foster home, and initiated dependency proceedings.[3] N.T., 8/10/17, at 19, 63. A court order entered on an unspecified date prohibits Father's contact with Child.[4] *Id*. at 66; N.T., 9/5/17, at 12–13. As such, Father has not seen Child at any time

---

[3] Dependency Docket DP-421 of 2015.

[4] It appears that order was entered within Father's criminal case and provided that Father was to have "no contact with [Child] unless contact was approved by a Family Court Judge. As of [the date of the filing of the petition to terminate Father's parental rights,] contact between [Child] and [Father] has not been approved." Petition for Termination of Parental Rights, 6/8/17, at ¶ 11.

- 2 -

since Child, now nearly three years old, was four months old.  N.T., 8/10/17, at 66.

During Child's dependency, Child's paternal grandmother and step-grandfather (collectively "Paternal Grandparents"), who reside in California, apparently were presented as a kinship resource for Child.  N.T., 8/10/17, at 48–49; Orphans' Court Opinion, 11/3/17, at 3.  Therefore, CYS initiated an Interstate Compact on the Placement of Children ("ICPC") with respect to Paternal Grandparents.[5]  N.T., 8/10/17, at 48–49; N.T., 9/7/17, at 62.

_____

[5]  Section 761 of the Pennsylvania Public Welfare Code, the Interstate Compact on the Placement of Children, 62 P.S. § 761, is implemented, *inter alia*, under 55 Pa. Code § 3130.41.  The Council of State Governments recommended the Interstate Compact on the Placement of Children to address common problems arising from the interstate care and placement of children in foster care or adoptive homes because when a child was sent out of state, that state of origin lost jurisdiction over the child and supervision became difficult or impossible.

> As drafted, the [ICPC] provides for notification of appropriate state or local authorities in the receiving state before placement by out-of-state persons and agencies.  The authorities in the receiving state are given the opportunity to investigate and, if satisfied, must notify the sending state that the proposed placement does not appear to be contrary to the child's best interest.  After a placement has been made, the sending state continues to have financial responsibility for support and retains jurisdiction over the child.

*McComb v. Wambaugh*, 934 F.2d 474, 479–480 (3d Cir. 1991).

The juvenile court held multiple hearings regarding the ICPC, with the final one apparently occurring on October 3, 2016.[6]  N.T., 9/5/17, at 14, 31–32.  The juvenile court issued an order dated October 7, 2016, finding that Child's best interests required that she remain in her current foster care placement ("ICPC order").[7]  *Id.* at 32; N.T., 8/10/17, at 50, 54; Orphans' Court Opinion, 11/3/17, at 3.  As such, since her placement, Child has resided with the same foster parents, and they are a pre-adoptive resource.  N.T., 8/10/17, at 63.  We note that Judge Rogers stated on the record in open court that Paternal Grandparents had filed a custody action, which they withdrew following issuance of the ICPC order.  N.T., 9/5/17, at 32.

On June 8, 2017, CYS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(9)(ii) and (b).  The

---

[6]  Because the juvenile court record was not incorporated into the instant record, we lack myriad details concerning the dependency proceedings.  We have gleaned much of that procedural history from comments by the orphans' court jurist, the Honorable Jennifer L. Rogers, who also presided over the dependency proceedings.  Orphans' Court Opinion, 11/3/17, at 3. **See** 42 Pa.C.S. § 6351(i) (Juvenile Act suggests that it is appropriate for the dependency judge to also preside over the termination hearing).

[7]  Judge Rogers issued the involuntary termination decree, presided over the ICPC hearings, and issued the ICPC order.  During the termination hearing, Father presented the ICPC order as an exhibit, which the orphans' court accepted without objection, and the court took judicial notice of the order.  N.T., 8/10/17, at 51-53.  However, despite its inclusion in the Reproduced Record at P3, the ICPC order is not included in the record certified to us on appeal.  **See Commonwealth v. Preston**, 904 A.2d 1, 6–7 (Pa. Super. 2006) (*en banc*) (It is the appellant's responsibility to ensure the record is complete).  As we explain *infra*, the state of the record is one factor impacting our decision regarding waiver.

orphans' court held a hearing on August 10, 2017, and September 5–7, 2017, during which Father was represented by court-appointed counsel. Child also was represented by counsel. N.T., 8/10/17, at 11. During the hearing, CYS presented the testimony of CYS supervisor, Paul Guido; CYS caseworker, Jeff Setser; and Father's corrections counselor at SCI Rockview, Richard Lansberry. Father testified on his own behalf *via* telephone from SCI Rockview on September 5, 2017.[8]

By decree dated September 8, 2017, and entered September 12, 2017, the orphans' court involuntarily terminated Father's parental rights. On October 12, 2017, Father, through new counsel,[9] filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a Rule 1925(a) opinion on November 3, 2017.

Father raises a single issue for our review:

Whether the [orphans'] [c]ourt abused its discretion in terminating the parental rights of Father in that:

The [c]ourt erroneously terminated Father's parental rights in that Father obtained the support of [Paternal Grandparents]. . . . [Paternal Grandparents] presented themselves to Luzerne County CYS as kinship resources and were approved under the interstate compact. The

---

[8] The involuntary termination hearing continued to September 6 and 7, 2017, with respect to Mother's parental rights only.

[9] New counsel entered his appearance on behalf of Father on October 12, 2017.

[c]ourt wrongfully rejected [Paternal Grandparents] as kinship resources and allowed the minor child to remain in foster care. Had [Paternal Grandparents] been approved as [a] kinship resource[], that would have alleviated the conditions that led to placement and thereby provided no grounds for termination.

Father's Brief at 4.

We review Father's issue according to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

- 6 -

paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(9)(ii) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (9) The parent has been convicted of one of the following in which the victim was a child of the parent:
>
> * * *
>
> (ii) a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);
>
> * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(9)(ii) and (b).

Father does not contest the termination of his parental rights under Section 2511(a)(9)(ii). Father's Brief at 20. Rather, Father's argument relates to the ICPC order, and he asserts that "the availability of an

appropriate family placement through kinship is grounds for a court exercising its discretion and not terminating parental rights." ***Id***. at 22. He relies, in part, on Section 2511(b) ("Other considerations"). ***Id***. at 21.

The statute outlining the Kinship Care Program provides, in pertinent part:

> **(b) Placement of children**.—If a child has been removed from the child's home under a voluntary placement agreement or is in the legal custody of the county agency, the county agency shall give first consideration to placement with relatives. The county agency shall document that an attempt was made to place the child with a relative. If the child is not placed with a relative, the agency shall document the reason why such placement was not possible.

62 P.S. § 1303(b). We have explained:

> [K]inship care is a subset of foster care where the care provider already has a close relationship to the child. In kinship care (as with foster care generally), legal custody of the child is vested in [CYS]. [CYS] then places the child with the care provider. The court may place children with a foster family, although there might be willing relatives, where foster care is in the best interests of the children or aggravated circumstances exist. The goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of children, but must be weighed in conjunction with other factors.

***In re Adoption of G.R.L.***, 26 A.3d 1124, 1127 (Pa. Super. 2011) (internal citations and quotation marks omitted).

In its Rule 1925(a) opinion, the orphans' court regarded Father's issue as waived because Father failed to appeal the juvenile court's ICPC order. Orphans' Court Opinion, at 11/3/17, at 3; ***see also*** Pa.R.A.P. 903(a) (providing that an appeal "shall be filed within 30 days after the entry of the

- 8 -

order from which the appeal is taken"). Such a conclusion implies that the ICPC order was final and appealable when entered. The orphans' court failed to recite any supporting law or explain its conclusion. Orphans' Court Opinion, at 11/3/17, at 3. Conversely, Father contends that the ICPC order was interlocutory and not appealable when entered.

Pursuant to 42 Pa.C.S. § 742, this Court has jurisdiction over appeals from "final orders."[10] Moreover, it is well settled that with respect to dependency proceedings, an order granting or denying a placement goal

---

[10] Pa.R.A.P. 341 defines a "final order" as follows:

* * *

**(b) Definition of Final Order.**—A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) RESCINDED

(3) is entered as a final order pursuant to paragraph (c) of this rule.

**(c) Determination of finality.**—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order. . . .

Pa.R.A.P. 341(b), (c).

change shall be deemed a final order when entered. *See In re H.S.W.C.-B.*, 836 A.2d 908, 911 (Pa. 2003). In this case, however, the record does not reveal, nor does Father assert, that the ICPC order granted or denied a goal change. Indeed, during the instant termination hearing on September 5, 2017, the orphans' court stated, "[W]e are now into the [dependency] docket, DP-421-2015, addressing the agency's petition for change of goal to that of adoption addressing natural father's portion[,]" lending credence to the conclusion that the ICPC order did not address a goal change for Father. N.T., 9/5/17, at 17.

We are not inclined to find waiver in this case. The combination of the incomplete certified record, the failure of CYS to incorporate the dependency record, and the orphans' court's failure to support its conclusion compel our determination that waiver is inappropriate herein. Thus, we address Father's claim.

Father baldly asserts that "the availability of an appropriate family placement through kinship is grounds for a court exercising its discretion [pursuant to Section 2511(b)] and not terminating parental rights." Father's Brief at 22. Father continues,

> Simply put: there is no valid reason why [C]hild should not have been placed with [her paternal grandparents] so long as firm appropriate restrictions on [Father's] contact w[ere] in place. Where a child is born into a situation like this, the child should not lose her entire family and heritage without exceptional reasons for doing so.

*Id.* Father provides no statutory or case law in support of his assertion that a court may deny a petition for the involuntary termination of parental rights under Section 2511(b) based solely on finding that an appropriate family placement through kinship exists.

This Court has explained that the requisite inquiry into the "needs and welfare" of the child under Section 2511(b), the only determination Father challenges, involves intangibles of the parent-child relationship "such as love, comfort, security, and stability. . . ." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the orphans' court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases **where there is no evidence of any bond between the parent and child**, **it is reasonable to infer that no bond exists**. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (emphasis added) (citation omitted). Moreover, we have explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of

child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." ***In re Adoption of T.B.B.***, 835 A.2d 387, 397 (Pa. Super. 2003). As we explained in ***In re A.S.***, 11 A.3d 473, 483 (Pa. Super. 2010),

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011).

Furthermore, our Supreme Court has stated that "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, 71 A.3d at 268. The Supreme Court directed that in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id***. at 269. The ***T.S.M.*** Court observed that "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id***.

Based on the foregoing, we reject Father's argument that the alleged existence of an appropriate kinship placement is relevant to the termination of parental rights under Section 2511(b). Indeed, we recently stated, "Any benefit Child may receive from knowing other biological family does not

affect whether it would be in her best interests to terminate Father's parental rights." **In Interest of H.K.**, 161 A.3d 331, 340 (Pa. Super. 2017). The issue raised simply is not related to the only order on appeal, the involuntary termination of parental rights.

Moreover, even if relevant, we would reject Father's claim that the ICPC order was an abuse of discretion or constituted legal error because the court did not consider Child's best interests pursuant to Section 5328(a) of the Child Custody Act, 23 Pa.C.S. § 5328(a), in denying her kinship placement with Paternal Grandparents. In this regard, Father requests that this Court vacate the involuntary termination decree and remand this matter "for full consideration of all relevant factors including the child custody factors as set forth by statute including the value of the child being placed with biological relatives." Father's Brief at 23.

The ICPC order arose in Child's dependency case. Therefore, the Juvenile Act, not the Custody Act, was pertinent. We have explained, "'[K]inship care' is a subset of foster care where the care provider already has a close relationship to the child. 62 P.S. § 1303. In kinship care, as with foster care generally, legal custody of the child is vested in [CYS]. [CYS] then places the child with the care provider." **In re J.P.**, 998 A.2d 984, 987 n.3 (Pa. Super. 2010). It is important to note that Father does not assert that the ICPC order was erroneous as a matter of law or was otherwise an abuse of discretion pursuant to the foregoing relevant law. In

its Pa.R.A.P. 1925(a) opinion, the orphans' court stated that it denied the request for kinship care placement with Paternal Grandparents because the ICPC report

> raised some concerns regarding [Paternal Grandparents'] ability to meet all the child's needs on a consistent basis. Furthermore, the court noted that at no time during [Child's] placement totaling approximately two (2) years did [Paternal Grandparents] make any effort or attempt to have any contact with [C]hild either physically or in any other form. . . . In this case, [C]hild remained with her foster parents because the court found that it is in [C]hild's best interest.

Orphans' Court Opinion, 11/3/17, at 4. We discern no abuse of discretion in denying the kinship care placement.

We have carefully reviewed the testimonial evidence during the involuntary termination hearing, at which time Child was two years old. Child was removed from Father when she was four months old, and she has had no contact with him during her two years in placement. Therefore, no parent-child bond exists between them. Rather, a parent-child bond exists between Child and the foster parents, who desire to adopt her. N.T., 8/10/17, at 63, 66–69. The competent record evidence supports the orphans' court's decision that terminating Father's parental rights serves Child's developmental, physical, and emotional needs and welfare pursuant

to Section 2511(b).[11]  Accordingly, we affirm the decree pursuant to 23

Pa.C.S. § 2511(a)(9)(ii) and (b).

     Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/23/2018

---

[11]  We further note the orphans' court's statement that "[a]ssuming *arguendo* that the court placed [Child] with [Paternal Grandparents] in California, Father's rights would still have been terminated."  Orphans' Court Opinion, 11/3/17, at 3.